IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| THE 134 PAC LLC, et al § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. 4:24-cv-00490-O |
| § | |
| TERRY LANN MURPHY II, et al § | |
| § | |
| Defendants. § | |
| § | |
| § | |

## ORDER

Before the Court are Plaintiffs' Application for a Preliminary Injunction and Expedited Consideration (ECF No. 49), filed September 5, 2024; Defendants' Response (ECF No. 66); and Plaintiffs' Reply (ECF No. 67). Having considered the Motion, briefing, and applicable law, the Court determines that Plaintiffs' Application for a Preliminary Injunction is **DENIED.**

## I.   BACKGROUND[1]

This case is about the electioneering practices in Palo Pinto County, Texas. Plaintiffs are the 134 PAC LLC, a General Political Action Committee that advocates and works for expanding voting access and the protection of voting rights in rural Texas; and Carla Schoonover, individually and in her capacity as Democratic County Chair of Palo Pinto County. Plaintiffs seek to enforce the Voting Rights Act against Defendants to keep them from engaging in what Plaintiffs allege is voter intimidation. Defendants, Terry Lan Murphy II, Brandon Johnson, and Russel Hess, are individuals who organize and advocate for conservative political candidates and causes in Palo

---

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiff's Complaint. *See* Pls.' Compl., ECF No. 1.

1

Pinto County. During early voting and on election days, Defendants have engaged in electioneering at the County Annex building in Mineral Wells, Texas.

In April 2024, Palo Pinto County enacted for the first time electioneering rules for the County Annex. Those rules restricted where, when, and how people are permitted to electioneer on Palo Pinto County property. In response to the new electioneering regulations, two local grassroots organizations and one citizen subsequently sued to enjoin the regulations, claiming the regulations violate the First Amendment. *Palo Pinto Cnty. Conservatives v. Long,* No. 4:24-CV-328-Y, 2024 WL 2032936 (N.D. Tex. May 7, 2024). In that related case, the Fifth Circuit vacated the district court's order denying a preliminary injunction and preliminarily enjoined the April 2024 regulations in their entirety. *Pinto Cnty. Conservatives v. Long*, No. 24-10432, 2024 WL 3833292, at *7 (5th Cir. Aug. 15, 2024).

This private enforcement action of the Voting Rights Act was brought in May 2024. Plaintiffs moved for a preliminary injunction after the Fifth Circuit's decision in the related case. After full briefing on the application for preliminary injunction, the Motion is ripe for the Court's adjudication.

## II. LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy" and will be granted only if the movants carry their burden on all four requirements. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008) (quoting *Planned Parenthood of Hous. & Se. Tex. v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005)); *see also* FED. R. CIV. P. 65(a). The Court should issue a preliminary injunction only if the movants establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of hardships weighs in their favor; and (4) that the issuance of the preliminary injunction will not disserve the public interest. *Daniels Health Scis.,*

*L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). "The decision to grant or deny a preliminary injunction is discretionary with the district court." *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985). The movant must make a clear showing that the injunction is warranted, and the issuance of a preliminary injunction "is to be treated as the exception rather than the rule." *Id.*

## III.  ANALYSIS

Plaintiffs' request for a preliminary injunction fails because Section 11(b) of the Voting Rights Act does not contain a private right of action, explicit or implied under the *Sandoval* test, and accordingly, they cannot show a "likelihood of success on the merits." *Daniels Health Scis.*, 710 F.3d at 582. "To show a likelihood of success, the plaintiff must present a prima facie case, but need not prove that he is entitled to summary judgment." *Id.*

Plaintiffs assert that Defendants' actions outside of the Palo Pinto County annex are a "repeated campaign of harassing and intimidating voters"[2] and seek to enforce the prohibitions in Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b), against Defendants. The *pro se* Defendants do not argue that Plaintiffs lack a private right of action under Section 11(b). But the Court *sua sponse* observes that Section 11(b) does not set forth an express cause of action for private parties to sue to enforce its protections. Accordingly, the Court, *sua sponte*, applies the *Sandoval* analysis to assess whether a private right of action may be implied under Section 11(b). *See Alexander v. Sandoval*, 532 U.S. 275, 286–88 (2001).

"[P]rivate rights of action to enforce federal law must be created by Congress." *Id.* at 286. For an implied right of action to exist, the statute must have both (1) rights-creating language and (2) language demonstrating congressional intent to provide a private remedy to enforce that right.

---

[2] Pls.' Compl. 1, ECF No. 1.

3

*Id.* at 286–88. As such, "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* at 286 (citing *Transamerica Mort. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979)). "Without [statutory intent], a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286–87. Section 11(b) of the Voting Rights Act provides:

> No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any person to vote or attempt to vote . . . .

52 U.S.C. § 10307(b).

As to the first prong, Section 11(b) contains rights-creating language. Section 11(b) defines a class of persons—any person voting, attempting to vote, or aiding anyone in voting or attempting to vote (among others)—and their right to not be intimidated, threatened, or coerced. Given this language, Section 11(b) squarely contemplates a right to be free from intimidation, threats, or coercion when exercising the right to vote. *See Colo. Mont. Wyo. State Area Conf. of the NAACP v. U.S. Elec. Integrity Plan*, 653 F.Supp.3d 861, 868 (D. Colo. 2023) (concluding under the *Sandoval* analysis that Section 11(b) contains rights-creating language).

That said, rights-creating language is not enough to conclude Section 11(b) contains a private right of action. The second prong of the *Sandoval* analysis requires language demonstrating congressional intent to provide a private cause of action. *Sandoval*, 532 U.S. at 288. A different section of the Voting Rights Act—Section 3—provides that "aggrieved person[s]" may initiate statutory proceedings to enforce the voting guarantees of the Fourteenth and Fifteenth Amendments. 52 U.S.C. § 10302(a)–(c). And Section 14 of the Voting Rights Act sets out various rules and procedures for "enforcement proceedings", including a provision allowing for attorney's

fees to a "prevailing party, other than the United States" in an "action or proceeding to enforce the voting guarantees of the Fourteenth or Fifteenth amendment." 52 U.S.C. § 10310(e). Clearly, Congress has intended for private parties to enforce the rights of the Voting Rights Act *if* those rights are the guarantees of the Fourteenth or Fifteenth Amendments. Unfortunately, Plaintiffs simply assert that Section 11(b) contains a private right of action. Plaintiffs do not conduct the *Sandoval* analysis and point to no authority that Section 11(b) is designed to protect the guarantees of the Fourteenth or Fifteenth Amendments.

The question of whether Section 11(b) is derived from the Fourteenth or Fifteenth Amendments, or another constitutional source is open. Two different district courts have concluded that Section 11(b) stems from the Elections Clause rather than the Fourteenth or Fifteenth Amendments. *See League of United Latin Am. Citizens – Richmond Region Council 4614 v. Pub. Interest Legal Found.*, No. 1:18-cv-00423, 2018 WL 3848404, at *3 (E.D. Va. Aug. 13, 2018); *Andrews v. D'Souza*, 696 F. Supp. 3d 1332, 1351 (N.D. Ga. 2023). The Court concludes that there is neither an "identifiable link between" the right to be free from intimidation, threats, or coercion when exercising the right to vote and Fourteenth or Fifteenth Amendments, nor "any statutory language demonstrating congressional intent to provide a private remedy for a violation of those rights." *Andrews*, 696 F. Supp. 3d at 1351.

The Court is aware other district courts have concluded that Section 11(b) creates a private right of action. However, most of these cases assumed there was a private right of action or summarily concluded so without a *Sandoval* analysis. *See Nat'l Coal. on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 476 (S.D.N.Y. 2020), *reconsideration denied*, No. 20 CIV. 8668 (VM), 2020 WL 6365336 (S.D.N.Y. Oct. 29, 2020) ("Defendants contend that Section 11(b)

5

affords no private right of action. That is incorrect."); *see also Council on Am.-Islamic Rels. Minn. v. Atlas Aegis, LLC*, 497 F.Supp.3d 371, 378 (D. Minn. 2020) (assuming private right of action).

Additionally, the district courts that have considered this question in depth rely on cases from a bygone era of finding implied private rights of action. For example, in *Michigan Welfare Rights. Organization v. Trump*, the district court reasoned that Section 11(b) contains an implied private right of action because the Supreme Court in *Morse v. Republican Party of Virginia* held that Section 10 included an implied private right of action. 600 F. Supp. 3d 85, 104–06 (D.D.C. 2022) (citing *Morse v. Republican Party of Virginia*, 517 U.S. 186 (1996)). The district court in *Michigan Welfare Rights Organization* extended *Morse* because the Supreme Court has instructed lower courts to "follow the case which directly controls" if "a precedent of this Court . . . appears to rest on reasons rejected in some other line of decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (citation omitted).

However *Morse* does not "directly control[]" private rights of action under Section 11(b). *Id.* Instead the Court here has good reason not to extend *Morse* because it identified an implied private right of action under Section 10—not Section 11—and was decided before the Supreme Court in *Sandoval* created a new approach to implied private rights of action. Likewise, in *Arkansas State Conference NAACP v. Arkansas Board of Apportionment*, the Eighth Circuit declined to extend *Morse*, noting that implied causes of action are treated differently today than they were when *Morse* was decided. 86 F.4th 1204, 1216 (8th Cir. 2023) ("Just five years after *Morse*, the Supreme Court made clear that 'text and structure' are the guideposts, not 'contemporary legal context.'" (quoting *Sandoval*, 532 U.S. at 287–88.)).

Here, the Court is disinclined to extend precedents that "were decided at a time when the prevailing law assumed that a proper judicial function was to 'provide such remedies as are

6

necessary to make effective' a statute's purpose." *Zigar v. Abbasi*, 582 U.S. 120, 132 (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964)). Since that time the Supreme Court has taken a "far more cautious course before finding implied causes of action." *Id.* Now "when deciding whether to recognize an implied cause of action, the 'determinative' question is one of statutory intent." *Id.* at 133 (quoting *Sandoval*, 532 U.S. at 286). Thus, because it is a question of Congress's intent "to create the private right of action asserted," the Court does not find Congressional intent in the text or structure of Section 11 of the Voting Rights Act. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). And given that "a private cause of action will not be created through judicial mandate," the Court must conclude that Plaintiff does not have an implied private right of action. *Zigar*, 582 U.S. at 132.

Accordingly, Plaintiffs do not "show a likelihood of success" or "a prima facie case" because Section 11(b) of the Voting Rights Act does not contain a private right of action, explicit or implied under the *Sandoval* test. *Daniels Health Scis.*, 710 F.3d at 582. Because Plaintiffs fail to show a show a substantial likelihood of success on their Voting Rights Act claim, they are not entitled to preliminary injunctive relief, and the Court need not address the remaining three requirements for a preliminary injunction.

Finally, because Plaintiffs cannot enforce the Voting Rights Act without a private right of action,—express or implied—the Court does not address whether Defendants' actions violate the Voting Rights Act.

## IV. CONCLUSION

Concluding that there is no substantial likelihood of success on the merits of Plaintiffs' claims, the Court hereby **DENIES** Plaintiffs' Application for a Preliminary Injunction.

**SO ORDERED** this **16th** day of **October, 2024**.

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE

7